The opinion below is hereby signed. Dated: August 31, 2005.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                              )
                                   )
CAPITOL HILL GROUP,                )   Case No. 02-00359
                                   )   (Chapter 11)
            Debtor.                )

OPINION RE APPLICATION TO RELEASE CASH BOND TO SATISFY
<u>AUGUST 1, 2005, JUDGMENT AND CROSS-MOTIONS RE STAY PENDING APPEAL</u>

By a judgment signed on August 1, 2005, and entered on August 2, 2005, Shaw Pittman[1] obtained an award for the recovery from Capitol Hill Group ("CHG") of $209,952.86 in attorneys' fees and expenses incurred during the period of September 2004 through May 2005 in enforcing Shaw Pittman's rights under a contract breached by CHG.  Shaw Pittman seeks to satisfy the August 1, 2005, judgment from a cash bond previously posted by CHG when it pursued its last round of appeals.  That round of appeals related to a fee award judgment of December 1, 2004, and this court's order of December 17, 2004, denying CHG's motion under F.R. Civ. P. 60(b) for relief from that judgment (and other related

---

[1] Shaw Pittman is now known more fully as Pillsbury Winthrop Shaw Pittman LLP.

judgments). The judgment and the order appealed were affirmed by the District Court's Orders and its Memorandum Opinions filed on June 22, 2005, in, respectively, Civil Actions Nos. 05-97 and 05-98. CHG opposes Shaw Pittman's Application and has filed motions seeking a stay of the August 1, 2005, judgment.

I

CHG contends that the cash bond posted when it pursued the earlier round of appeals was not intended as a bond for the August 1, 2005 judgment. However, the bond was fixed at an amount in excess of the monetary awards under the December 1, 2004, judgment and provided that upon a non-stayed affirmance by the district court:

> Shaw Pittman shall be entitled, to the extent consistent with the affirmance, to immediately withdraw from the Registry (a) all unpaid sums due under the Judgment, and (b) all other sums approved pursuant to a non-stayed court order.

Order of January 1, 2005, ¶ 4. At ¶ 6, this bond order further specified that the deposited funds served as a bond for the stay and gave Shaw Pittman a first priority perfected security interest in the funds.

A.

The bond protected Shaw Pittman with respect to collecting the judgment but served the additional purpose an appeal bond serves of protecting the appellee (here, Shaw Pittman) with respect to interest, costs, and allowable attorney's fees

2

incurred in defending against the appeal. This is evident based on this court's having estimated the likely fees Shaw Pittman would incur as a result of the appeal in fixing the amount of the bond. Appeal bonds traditionally compensate for all damages incurred by reason of the appeal, including attorney's fees and costs awardable by reason of pursuit of the appeal.

B.

Shaw Pittman contends that the bond went further and extends to all amounts recoverable based on CHG's breach of contract, including amounts incurred prior to CHG's filing a motion for a stay pending appeal. The August 1, 2005, judgment awarded attorneys fees incurred from September 2004 through May 2005, and thus part of the award is for fees incurred from September 1, 2004, through November 30, 2004, even before the court issued the judgment of December 1, 2004. The fallacy in Shaw Pittman's argument is demonstrated by paragraph 5 of the January 19, 2005, order which provided that in the event the district court reversed the December 1, 2004, judgment, CHG would be entitled to withdraw the bond funds to the extent consistent with the reversal. If the bond had been intended to cover contract damages recoverable by Shaw Pittman other than those incurred by reason of the appeal, the order would not have provided for such a right in CHG to withdraw the bond funds.

C.

A portion of the August 1, 2005, judgment relates to attorney's fees and expenses incurred by reason of the appeal. The judgment granted all of Shaw Pittman's requested fees and expenses for the months of September 2004 through May 2005. The amounts awarded that arose in the period of January 8, 2005, through May 2005 (after the court announced its decision regarding the bond order on January 7, 2005) are at least $89,756.78 (or 32.45% of the outstanding principal balance of $276,572.27 owed on the December 1, 2004, judgment).[2] When that $89,756.78 is combined with the December 1, 2004 judgment's balance owed of $276,572.27 plus interest, the amounts recoverable from the bond far exceed the bond fund of $332,000 (plus any interest accumulated on it).[3]

D.

Although, in light of the foregoing, it may become an academic point, the court notes that the August 1, 2005,

---

[2] If it becomes necessary, the parties may file supplemental papers to address whether the court should use a date earlier than January 7, 2005, but if the judgment of December 1, 2004, is collected from the $332,000 cash bond, less than $89,756.78 will remain on deposit in the court's registry, and the issue of an earlier date will be academic. The $89,756.78 does not include any expenses incurred in January 2005 because the expenses for that month are not broken down by whether they were incurred after January 7, 2005.

[3] The court signed an order on August 30, 2005, authorizing the $332,000 cash bond to be applied to the judgment of December 1, 2004, which is no longer subject to any stays.

judgment, if not stayed, is enforceable by Shaw Pittman for *all* amounts, not just amounts incurred by reason of the appeal. Unless stayed, Shaw Pittman is entitled to execute the August 1, 2005, judgment against the bond funds. If authorization is necessary, Shaw Pittman is hereby authorized, once the August 1, 2005, judgment is no longer stayed, to serve a writ of execution on the clerk. Because the funds are in the custody of the court, a necessary element of execution is to obtain a court order authorizing payment of the funds (to the extent that CHG has any right to them) to Shaw Pittman pursuant to such execution. However, the execution writ would not seize anything that is *presently* owed to CHG. CHG's right to recover the funds would require a ruling by the court of appeals directing the district court to enter an order reversing the bankruptcy court's December 1, 2004 judgment (and the district court's entry of such an order in compliance with the mandate of the court of appeals). Until that occurs there is no amount owed to CHG (except contingently) and thus execution will not seize anything currently owed to CHG. There is no occasion at this juncture to order a release of funds pursuant to execution (as opposed to a release of funds pursuant to enforcement of the appeal bond).

## II

CHG's stay motion proposes to post a cash bond equal to the August 1, 2005, judgment amount. However, as discussed above, a

5

bond ought to cover any costs or allowable attorney's fees incurred as part of the appeal.

The inadequacy of the cash bond posted to stay the December 1, 2004, judgment is instructive. The court's order of January 19, 2005, fixed a cash bond of $132,500 as the price for a stay pending appeal of the $82,500 portion of the December 1, 2004, judgment that the court thought was potentially open to reversal. That represented a cash bond of roughly 160.6% of the $82,500 part of the judgment being stayed. The court granted only a temporary stay of the remainder of the judgment, requiring a bond only slightly in excess of that part of the judgment, leaving the issue of any further stay and the appropriate additional cash bond for such further stay to the district court. The district court (perhaps thinking that this court had fully addressed the appropriate amount of a cash bond) called for no additional cash bond in granting the further stay.[4] The result was a cash bond of $332,000 for a principal judgment balance of $276,572.27, representing a cash bond of only 120% of the principal judgment balance.

---

[4] As to the $194,072.27 balance of the judgment, the court thought that CHG had no chance whatsoever on appeal, but the court granted a temporary stay pending CHG's seeking a stay from the district court. The court conditioned that temporary stay of that $194,072.27 portion of the judgment on CHG's posting a cash bond of $199,500 (which the court thought was sufficient to protect Shaw Pittman during the short duration of the temporary stay).

6

That cash bond has proven woefully inadequate.  As noted above, the recoverable attorney's fees and expenses chargeable to the cash bond so far exceed 32% of the principal balance of $276,572.27 owed on the December 1, 2004, judgment.  Moreover, Shaw Pittman is seeking sanctions in the district court for a frivolous appeal which, if awarded, could be asserted against the present cash bond, and its ongoing efforts to collect fees incurred in the appeal ought to be a damage flowing from the appeal that would also be compensable from the $332,000 cash bond.  In hindsight, the bond ought to have been fixed at 150% of the principal amount to guard against the uncertainty of precisely how much Shaw Pittman would incur in attorney's fees and expenses.

Turning to the August 1, 2005 judgment sought to be stayed now, CHG has had the benefit of a stay (via the court's inaction in enforcing the judgment) from the date of CHG's filing its motion to stay the judgment.  Any bond pending appeal ought to cover the attorney's fees and expenses incurred since CHG filed its motion on August 11, 2005.[5]  The judgment is for $209,952.86, and although less than the $276,572.27 at stake in the last appeal, that difference does not necessarily mean that the fees generated in the current appeal will be less than in the previous

---

[5] The delay in enforcing the judgment prior to that date was based on this court's erroneous belief that the judgment was unenforceable until a mandate issued.

appeal. Everything suggests that as the procedural background of the case becomes lengthier, the fees in each succeeding appeal could be even higher than in the previous appeals. However, the last round involved both an appeal of the denial of the motion for reconsideration of the court's prior ruling that Shaw Pittman was entitled to recover fees incurred in enforcing the oral contract, and an appeal of the order fixing reasonable attorney's fees incurred prior to September 2004. In contrast, the issues in the current appeal appear to be two straightforward issues that should not entail as much in attorney's fees as the last round. Although the court has determined that a portion of the August 1, 2005, judgment is already covered by the balance of the bond posted staying the December 1, 2004, judgment that will remain after satisfaction of that judgment, that bond potentially covers as well other attorneys' fees not yet reduced to judgment. Moreover, CHG maintains that the bond does not apply to any part of the August 1, 2005, judgment. Shaw Pittman is entitled to a bond devoted solely to the August 1, 2005, judgment and damages occasioned by the appeal thereof. The court will accordingly require a cash bond of $295,000.

The court notes that CHG has little chance of success on appeal (which weighs in favor of a cash bond well designed to protect Shaw Pittman against the worst foreseeable damage):

- CHG once again let Patrick Potter (one of Shaw Pittman's attorneys) be the sole witness in the evidentiary hearing, and provided no evidentiary basis for this court to conclude that Shaw Pittman's fees were excessive under the required lodestar analysis.
- As to CHG's Rule 54 argument, CHG appeared at a scheduling conference at which it raised no objection to the lack of a written Rule 54(d) motion, and a trial date was set.  It thereby waived that objection to the court's hearing Shaw Pittman's fee request without a Rule 54(d) motion having been filed.  Shaw Pittman in effect made an oral motion at the scheduling conference to impose attorney's fees, and this court had the discretion to set the matter for hearing without a written motion.  F.R. Bankr. P. 9013.  Moreover, the attorney's fees and expenses were incurred after this court's original ruling that CHG was in breach of its contract, and thus the request for those fees could not have been sought within 14 days after the entry of that ruling as contemplated by Rule 54(d).  Finally, all of the proceedings in this court have been handled as contested matters, not adversary proceedings, and Rule 54(d) has not been made applicable to contested

matters.  See  LBR 7054-1.

Shaw Pittman contends (based on the frivolousness of the appeal and other stay factors) that no stay whatsoever should be granted, but the court believes it is appropriate to grant a stay conditioned on the posting of a substantial cash bond so that CHG will have review on at least one appellate level.  Where such a bond is posted to stay a monetary judgment, in an amount designed to fully protect the appellee, the trial judge whose ruling is at stake should be chary of depriving the appellant of appellate review to assess whether the trial judge erred.  This is particularly so because such a stay would be a matter of right were this an adversary proceeding, and the judgment here, for all practical purposes, is no different than a monetary judgment in an adversary proceeding.

An order follows.

[Signed and dated above.]

Copies to:

Donald Hartman [counsel for CHG]

John Burns [counsel for CHG]

Patrick Potter [counsel for Shaw Pittman]

Office of the United States Trustee